NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VAUDRAL LUXAMA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> IRONBOUND EXPRESS, INC., *et al.*, <br> Defendants. | Civil Action No.: 11-2224 (ES) <br><br> **OPINION** |

SALAS, DISTRICT JUDGE

I. **Introduction**

Defendants Ironbound Express, Inc., Danny Lastra, and Frank Borland (collectively, "Defendants") seek dismissal of Vaudral Luxama, Chandler Luxeus, Javier R. Garcia, Fredo Bonhomme, Santos Maldonado, and Chanel Fontin's (collectively, "Plaintiffs") Amended Class Action Complaint ("Am. CAC") for having failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* D.E. No. 81). The Court granted leave for the American Trucking Associations, Inc. and the New Jersey Motor Truck Association, Inc. (the "Associations") to file a brief as *amici curiae* in support of Defendants' Motion to Dismiss the Am. CAC. (Order Granting Leave To File *Amicus Curiae* Brief, D.E. No. 83). The Court has considered the parties' submissions in support of and in opposition to the instant motion, including that of *amici curiae* Associations. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motion to dismiss is granted.

## II. Background

The parties are thoroughly familiar with the facts. Therefore, the Court provides a brief recitation of the facts essential to determine the issues presented by Defendants' motion.

In the Court's prior Opinion ("Prior Opinion"), the Court dismissed Plaintiffs' original Complaint without prejudice and granted Plaintiffs an opportunity to file an amended complaint within 30 days. *Luxama v. Ironbound Express, Inc.*, No. 11-2224, 2012 WL 5973277, at *9 (D.N.J. June 28, 2012). Plaintiffs filed the Am. CAC. (D.E. No. 79).

Plaintiffs, each of whom is a New Jersey resident, (Am. CAC ¶¶ 4-8), are truck drivers presently working exclusively for Ironbound Express, Inc. ("Ironbound"), (*id.* ¶ 3), a company "involved in the intermodal freight transportation business . . . ," (*id.* ¶ 9). Defendant Danny Lastra ("Lastra") "is the President of Ironbound Express," and Defendant Frank Borland ("Borland") "is the Chief Financial Officer of Ironbound Express." (*Id.* ¶¶ 11, 12).

Plaintiffs, "all of whom own their own tractors . . . lease them to [Ironbound Express] pursuant to a standardized lease agreement." (*Id.* ¶ 29). Despite the unambiguous language of the form lease agreement, which identifies Plaintiffs as independent contractors, (*see, e.g.*, *id.*, Ex. A, Lease Agreement ¶ 4), Plaintiffs allege that they have been improperly classified "as independent contractors rather than employees, which has resulted in . . . Plaintiffs not receiving required minimum wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*" ("FLSA"). (*Id.* ¶ 1). As such, Plaintiffs assert four counts under the FLSA: for damages for failure to pay minimum wages (First Count), (*id.* ¶¶ 82-94); for an accounting to determine the amount of minimum wages allegedly due under the FLSA (Second Count), (*id.* ¶¶ 95-98); for conversion and unjust enrichment with respect to the minimum wages allegedly due under the FLSA (Third Count), (*id.* ¶¶ 99-102); and for a declaratory judgment providing for relief for the

alleged violations under the FLSA (Fourth Count), (*id.* ¶¶ 103-06). Plaintiffs also allege that if Ironbound correctly classified the drivers as independent contractors, the form lease agreement does not comply with the federal Truth-in-Leasing regulations ("Regulations"), 49 C.F.R. § 376.1, *et seq.* (Fifth Count). (*Id.* ¶¶ 107-49).

Plaintiffs assert several new factual allegations in the Am. CAC. Plaintiffs now claim that: most of the drivers purchased used vehicles for modest sums and none own a chassis needed to haul cargo, (*id.* ¶ 30); most drivers cannot afford, and do not have, a second vehicle, (*id.* ¶ 31); [Ironbound] has the authority and right under the lease agreement to supervise the drivers when loading their trucks, (*id.* ¶¶ 34, 43); [Ironbound] provides cell phones to the drivers to communicate with [Ironbound] and the other drivers, (*id.* ¶ 37); the drivers usually are provided with a chassis owned by [Ironbound] in order to perform their services, (*id.* ¶ 38); the drivers are required to follow specific procedures established by Ironbound in the event of an accident, injury, property damage or cargo losses, damages or shortages, (*id.* ¶ 40); [Ironbound] provides mandatory training and withholds paychecks if employees do not attend, (*id.* ¶ 41); Ironbound distributes work rules to its drivers, (*id.* ¶ 42); Ironbound has the authority to direct the drivers to perform loading and unloading operations, (*id.* ¶ 44); Ironbound maintains significant control over drivers' schedules and withholds paychecks if drivers refuse to deliver additional containers, (*id.* ¶¶ 45, 50); Ironbound disciplines drivers for performance issues, (*id.* ¶ 52); drivers cannot assign work and must seek pre-approval for delegating work to an assignee from Ironbound, (*id.* ¶ 57); and drivers are not highly skilled, do not require a high school diploma or GED, and must only obtain a commercial driver's license, (*id.* ¶¶ 63-64). (*See also* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Pls. Br.") 13-14, D.E. No. 86).

Defendants' Motion to Dismiss the Am. CAC is now ripe for the Court's adjudication.

**III.     Legal Standard—Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition, the plaintiffs' short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (citation and quotation marks omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (discussing the Supreme Court's *Twombly* formulation of the pleading standard). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Furthermore, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citation omitted).

With this legal standard in mind, the Court next turns to the issues raised by Defendants' motion.

## IV. Analysis[1]

### A. Plaintiffs Are Independent Contractors

The Court must determine, as a threshold issue, whether Plaintiffs have pleaded facts demonstrating that they are employees under the FLSA.[2] Defendants argue, *inter alia*, that, "even with the new allegations, the Amended Complaint fails to allege facts that would establish Plaintiffs are employees." (Brief of Defendants In Support of Motion to Dismiss Amended Class

---

[1] As an initial matter, Plaintiffs argue that "Defendants' application more properly should be treated as a motion to dismiss for lack of subject matter jurisdiction." (Pls. Br. 2). This Court is perplexed as to why Plaintiffs take issue with a position that Plaintiffs supported in prior briefing. (*See* Letter from Stephen I. Adler, Esq. 3, D.E. No. 75.) In their letter, Plaintiffs advised the Court that it "has subject matter jurisdiction over Plaintiffs' causes of action and Defendants' motion to dismiss is properly considered under Rule 12(b)(6), as opposed to the Rule 12(b)(1), standard." (*Id.*; *see also* Letter from Adam Saravay, Esq., D.E. No. 74 (same)). Thus, both parties agreed that the Court has subject matter jurisdiction over the FLSA claim, and Rule 12(b)(6) is the proper standard for determining employee status under the FLSA. To be sure, subject matter jurisdiction exists here under 28 U.S.C. §§ 1331 and 1337.

[2] The Court refrains from repeating Plaintiffs' previously asserted factual allegations for purposes of the FLSA analysis. Instead, the Court adopts the recitation of the facts in its Prior Opinion and notes the distinctions between Plaintiffs' original complaint and Plaintiffs' Am. CAC to determine to what extent, if any, the new allegations alter each factor's analysis. As such, all factual allegations discussed in the FLSA analysis are new to the Am. CAC, unless noted otherwise in the Opinion.

Action Complaint ("Defs. Br.") 1, D.E. No. 81-2). In other words, Plaintiffs' FLSA claim must fail if they are unable to demonstrate employee status.

"The statutory definitions regarding employment status are necessarily broad to effectuate the remedial purposes of [the FLSA]." *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991). The FLSA generally defines an employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

Nonetheless, "[t]here is no single test to determine whether a person is an employee or an independent contractor for purposes of the FLSA." *Martin*, 949 F.2d at 1293. "[T]he Supreme Court has emphasized that the courts should look to the economic realities of the relationship in determining employee status under the FLSA." *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). Based upon this directive, the Third Circuit has opined that "the determination of the employment relationship does not depend on isolated factors but rather upon the 'circumstances of the whole activity.'" *Id.* (quoting *Rutherford Food Corp.*, 331 U.S. at 730). To that end, the Third Circuit has adopted a six-factor test to assist district courts in determining employment status under the FLSA. *See Zavala v. Wal-Mart Stores*, 393 F. Supp. 2d 295, 327-38 (D.N.J. 2005) (setting forth the six-factor test adopted by the Third Circuit). The six factors are as follows:[3]

---

[3] Plaintiffs aver that this Court engaged in an improper weighing process in determining Plaintiffs' employment status. (Pls. Br. 7). "While the determination of whether the employer-employee relationship exists is normally a question of fact for the jury, *where the facts are not in dispute, the question becomes one for determination by the court*." *Roebuck v. Bensing*, No. 97-5285, 1999 WL 124462 (E.D. Pa. Feb. 8, 1999) (emphasis added); *see also Martin v. Selker Bros., Inc.*, 949 F.2d at 1292 ("The employment status of the station operators is a legal conclusion."). Given the Court's obligation to accept all well-pleaded factual allegations in a complaint as true on a motion to dismiss, the question of whether Plaintiffs have pleaded

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; [and] 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* at 328.

### 1. The Degree of Employer's Right to Control

The Court must determine whether the first factor—the degree of the alleged employer's right to control the manner in which the work is to be performed—weighs in favor of classifying Plaintiffs as employees.

In the Prior Opinion, the Court found this factor to weigh in favor of identifying Plaintiffs as independent contractors. *Luxama*, 2012 WL 5973277, at *4. Plaintiffs' Am. CAC includes two new facts that are relevant to this first-factor analysis: that Ironbound has the authority, provided by the lease agreement, to supervise the drivers when loading their trucks and to direct the drivers to perform loading and unloading.

Plaintiffs argue that these two new facts shift the analysis in favor of finding employee status. (Pls. Br. 16). Defendants disagree, claiming that the "new allegations do not make any meaningful difference in the Court's conclusion." (Reply Brief of Defendants in Further Support of Motion to Dismiss Amended Class Action Complaint ("Defs. Reply Br.") 6, D.E. No. 90).

These new allegations do not materially alter the first-factor analysis. *See Li v. Renewable Energy Solutions, Inc.*, No. 11-3589, 2012 WL 589567, at *7 (D.N.J. Feb. 22, 2012) (citation omitted) ("This factor may weigh against finding employee status when the putative

---

sufficient facts to establish employee status necessarily compels the Court to engage in this weighing process to draw a legal conclusion.

employer exercises only minimal control over the putative employee."); *see also N. Am. Van Lines, Inc. v. NLRB*, 869 F.2d 596, 599 (D.C. Cir. 1989) ("Significant limits . . . exist upon what actions by an employer count as control over the means and manner of performance. Most important, employer efforts to monitor, evaluate, and improve the results or ends of the worker's performance do not make the worker an employee.").

Indeed, the lease agreement establishes that Ironbound exercises minimal control over the manner in which Plaintiffs perform their work. For example, Plaintiffs "shall be responsible for controlling the method and means, by which the leased equipment is operated," (Am. CAC, Ex. A ¶ 4), as well as "direct[ing] in all respects, the operation of the equipment used in the performance of this agreement[,]" (*id.* ¶ 12(a)). As stated in the Prior Opinion:

> Plaintiffs retain the authority to: (1) select the routes for pickup and delivery; (2) determine the appropriate method to secure the load; (3) select rest stops; (4) select gas and oil stops; (5) determine where the vehicle is to be repaired; (6) choose how the vehicle will be financed; (7) determine the working hours it will observe; and (8) identify the insurance company that will provide coverage.

*Luxama*, 2012 WL 5973277, at *4 (citing Am. CAC, Ex. A ¶ 12(a)(1)-(8)); *see also N. Am. Van Lines, Inc.*, 869 F.2d at 600 (holding that truck drivers were independent contractors, in part, because "[t]he drivers retained nearly absolute control over their performance in the cab, their dress, the *course they follow in hauling the load, when they work (while hauling loads and in between hauling loads), and where and when they stop, dine, or rest in the midst of driving*") (emphasis added). The fact that Ironbound retained some authority to supervise Plaintiffs during loading and unloading is not enough to overcome the extensive control permitted under the lease agreement.

## 2. The Plaintiffs' Opportunity for Profit or Loss

The second factor considers whether Plaintiffs "faced a real opportunity for either a profit or loss in their operations, depending upon the amount of their investment and their skills in management." *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1387 (3d Cir. 1985). With respect to the second factor, "courts should consider whether the worker's income depends on factors beyond his control or whether it is impacted by the worker's managerial skills." *Zanes v. Flagship Resort Dev., LLC*, No. 09-3736, 2012 WL 589556, at *6 (D.N.J. Feb. 22, 2012) (citing *Martin*, 949 F.2d at 1294).

In the Prior Opinion, the Court found that this factor weighed in favor of classifying Plaintiffs as independent contractors in large part because "Plaintiffs are paid on a 'per-trip basis' and control their 'working hours.'" *Luxama*, 2012 WL 5973277, at *5. The Court further reasoned that "Plaintiffs are able to increase their profits by acquiring additional trucks and employing drivers to assist with hauling cargo." *Id.* Plaintiffs' Am. CAC adds two new facts, namely, that the overwhelming majority of drivers cannot afford, and do not have a second vehicle, (Am. CAC ¶ 31), and that the drivers are not free to assign work without obtaining authorization from Ironbound for each potential assignee, (*id.* ¶ 57).

Plaintiffs argue that because "[d]rivers cannot afford to purchase a second truck or hire anyone to work for them," they cannot make a profit. (Pls. Br. 17). In their Am. CAC, Plaintiffs also claim that "[d]rivers do not have the ability to control their profits because they are not free to assign work to anyone they choose like most independent contractors." (Am. CAC ¶ 57). Defendants contend that "some of the drivers can afford to purchase a second truck and to hire a driver to operate it," and, therefore, drivers are afforded an opportunity for profit. (Defs. Reply Br. 7). Defendants also argue that "drivers can . . . hire other drivers who are already approved

by Ironbound." (Defs. Br. 13). Thus, Defendants claim that this factor remains unchanged because the opportunity to profit is based on a per-trip payment method where drivers can work more efficiently and more hours. (*Id.* 13).

Numerous courts have found that a payment method based on jobs performed rather than hours worked supports a finding of independent-contractor status. *See Martin*, 949 F.2d at 1294 (noting that a payment method based on a fixed commission weighs in favor of employee status); *Li*, 2012 WL 589567, at *8 (finding employee status in part because Plaintiff received a bi-weekly salary of a set amount); *Hicks v. Mulhallan*, No. 07-1065, 2008 WL 1995143, at *3 (D.N.J. May 5, 2008) (finding independent-contractor status in part because Plaintiff did not receive a salary but was compensated on a per-delivery basis).

Under the terms of the lease agreement, Plaintiffs are paid on a "per-trip" basis and control their "working hours." (Am. CAC, Ex. A ¶¶ 2, 12(a)(7)). Consequently, Plaintiffs do not receive a regular salary of a set amount, nor do Plaintiffs receive income derived from a fixed commission. Moreover, Plaintiffs are able to increase their profits by acquiring additional trucks and employing drivers to assist with hauling cargo. This Court is not persuaded that Plaintiffs' new allegations alter the second-factor analysis. Plaintiffs retain substantial control over the amount of hours worked and jobs performed. Furthermore, Plaintiffs' argument misses the mark. The issue is whether Plaintiffs have an opportunity to make a profit, not whether they are "successful in capitalizing on that opportunity." (*See* Defs. Reply Br. 7). To be sure, some drivers do own more than one truck, and drivers can hire additional workers approved by Ironbound. (Am. CAC ¶¶ 31, 57).

To that end, this factor weighs in favor of independent-contractor status.

### 3. The Alleged Employees' Investment in Equipment

The third factor considers "the alleged employee's investment in equipment or materials required for his task, or his employment of helpers." *Zavala*, 393 F. Supp. 2d at 328 (citation omitted).

In the Prior Opinion, the Court held that because "Plaintiffs—not Ironbound Express—invest in the equipment utilized to carry out the parties' agreement," the third factor weighed against classifying Plaintiffs as employees. *Luxama*, 2012 WL 5973277, at *6. In their Am. CAC, Plaintiffs primarily plead three new facts with regard to this factor: (1) "[m]ost of [the drivers] purchased pre-owned (used) trucks and for modest sums," (Am. CAC ¶ 30); (2) "[d]rivers . . . are usually required by Ironbound to use a chassis owned and supplied by [Ironbound]," (*id.* ¶ 38); and (3) "Ironbound provided cell phones to the drivers to communicate exclusively with the [c]ompany and the other [d]rivers," (*id.* ¶ 37). Plaintiffs contend that, with the addition of these new allegations, this factor becomes "a close call and likely neutral when deciding employee status." (Pl. Br. 18). Specifically, Plaintiffs argue that without the chassis, which by their own admission is not always provided by Ironbound, Plaintiffs cannot perform their services. (*Id.*). Plaintiffs also state that Ironbound provides the drivers with "their sole means of communication" by providing them with cell phones. (*Id.*). Defendants counter that the "drivers invest in the ownership of their own trucks (whether new or used), which is the most important and valuable piece of equipment they use and represents a far more significant investment than the ancillary equipment [Plaintiffs] identify (cell phone and chassis)." (Defs. Br. 14).

The fact that Plaintiffs hold an equity interest in their trucks, albeit in some cases used trucks, still weighs heavily in favor of finding independent-contractor status. *See N. Am. Van*

*Lines, Inc.*, 869 F.2d at 600 (finding independent-contractor status, in large part, because the drivers held an equity interest in their cabs). The fact that Ironbound provides some drivers with a chassis and all drivers with cell phones does not materially alter the Court's third-factor analysis. This Court is convinced that the most valuable equipment required for Plaintiffs' services is the truck, which Plaintiffs provide pursuant to their lease agreement. Therefore, the Court finds that the third factor weighs in favor of independent-contractor status.

    **4. Special Skill**

The Court next considers whether the services rendered by Plaintiffs require a special skill.

In the Prior Opinion, this Court found that the services rendered by the drivers require a commercial driver's license, which is a special skill. *Luxama*, 2012 WL 5973277, at *6. Plaintiffs now allege that "drivers are not highly skilled" because they are not required to possess a "degree of any sort[,] . . . not even a high school diploma or GED." (Am. CAC ¶ 63). Defendants argue that this issue of law is well established and was already decided by this Court in the Prior Opinion. (Defs. Br. 14).

Because the question of whether the possession of a commercial driver's license is a special skill is well-settled, the Court incorporates by reference the voluminous case law recited in the Prior Opinion and finds that the fourth factor weighs in favor of independent-contractor status. *Luxama*, 2012 WL 5973277, at *6 (citing case law).

    **5. The Degree of Permanence of the Working Relationship**

When addressing the degree of permanence of the working relationship, "courts should consider the exclusivity, length[,] and continuity of the relationship." *Zanes*, 2012 WL 589556, at *6 (citing *Martin*, 949 F.2d at 1295).

Despite the ninety-day lease agreement, the Court previously found that this factor weighs in favor of employee status because Plaintiffs had "deep-rooted relationships with Ironbound" and worked continuously and exclusively for Ironbound for several years. *Luxama*, 2012 WL 5973277, at *7. The Am. CAC slightly expounds upon Plaintiffs' prior allegations regarding the length and continuity of the parties' business relationships, but those allegations do not alter the analysis. (Defs. Br. 15 (citing Am. CAC ¶¶ 59-62)). Plaintiffs maintain that this Court should not reconsider its position. (Pls. Br. 15). Defendants submit that "the additional allegations would not change the Court's analysis." (Defs. Br. 15). However, Defendants note that "in the context of the highly-regulated trucking industry, a long-term relationship between an owner-operator and a trucking company is neutral, at most." (*Id.*).

This Court declines to re-evaluate this factor and incorporates by reference its previous discussion, finding the fifth factor to weigh in favor of employee status. *See Luxama*, 2012 WL 5973277, at *7.

### 6. Whether the Service Rendered Is an Integral Part of Employer's Business

Finally, the Court must determine whether Plaintiffs' services are an integral part of Ironbound's business.

Like the fifth factor, the Court previously found the sixth factor to weigh in favor of employee status. *Luxama*, 2012 WL 5973277, at *8. The Am. CAC does not assert any new factual allegations and, therefore, the Court's analysis remains unchanged. Plaintiffs maintain that this Court should not reconsider its position. (Pls. Br. 15). Defendants submit that "even where driving services are an integral part of a carrier's usual and regular business," "employee status is determined not by one factor but by 'the circumstances of the whole activity.'" (Defs. Br. 16).

13

The critical consideration with regard to the integral relationship factor is "the nature of the work performed by the workers: does that work constitute an 'essential part' of the alleged employer's business? In other words, regardless of the amount of work done, workers are more likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer." *Martin*, 949 F.2d at 1295 (citing *Donovan*, 757 F.2d at 1385).

Because the Am. CAC does not contain any new allegations, the Court incorporates by reference its previous discussion, finding the sixth factor to weigh in favor of employee status. *See Luxama*, 2012 WL 5973277, at *8.

### 7. Circumstances of the Whole Activity[4]

Overall, the six factor test suggests that Plaintiffs are independent contractors. Plaintiffs' new allegations do not meaningfully alter the Court's prior analysis. In viewing "the circumstances of the whole activity," this Court concludes that Plaintiffs' Am. CAC fails to demonstrate that Plaintiffs are employees. *Martin*, 949 F.2d at 1293 (citation & quotation marks omitted). Consequently, the Court dismisses Plaintiffs' Am. CAC because Plaintiffs are unable to state a plausible claim under the FLSA since relief under the FLSA is limited to "claims against 'employer[s]' whose '*employees*' have not been properly paid in accordance with the statute." *Li*, 2012 WL 589567, at *4 (emphasis added).[5] The Court's dismissal is without

---

[4] Defendants argue that this Court should also consider two additional factors: (1) the parties' stated understanding regarding the nature of their relationship; and (2) whether the defendant provides the kind of benefits generally provided to employees or withholds from compensation any amount of taxes. (Defs. Br. 16). This Court need not consider any additional factors beyond the six-factor economic realities test adopted by the Third Circuit in *Martin*. 949 F.2d at 1293.

[5] Because this Court finds that Plaintiffs are not employees, the Court need not address the issue of individual liability with regard to the two alleged employers Lastra and Borland.

prejudice, and Plaintiffs shall have 30 days to file an amended complaint to cure the deficiencies outlined above.[6]

## C. Truth-in-Leasing Regulations

This Court will now turn to Plaintiffs' new, alternative claim that Defendants' lease agreement violated the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1, *et seq.* Plaintiffs' Am. CAC asserts that, "if Ironbound has classified [d]rivers correctly as independent contractors, the form lease agreement[] . . . entered into by and between Ironbound and its [d]rivers do[es] not comply with the federal Truth-in-Leasing regulations." (Am. CAC ¶ 1).

49 U.S.C. § 14704(a) provides owner-operators with a private right of action to enforce the Regulations. *See* § 14704(a)(1) ("A person injured because a carrier or broker providing transportation or service . . . may bring a civil action to enforce that order under this subsection."). The statute further provides that: "A carrier or broker providing transportation or service . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." 49 U.S.C. § 14704(a)(2). Pursuant to this statute, Plaintiffs allege that Defendants violated the Regulations, which require an authorized carrier leasing trucking equipment and driving services from an owner-operator to enter into a written lease with the owner-operator, and require the leases to contain certain provisions. *See* 49 C.F.R. §§ 376.11-376.12; (Am. CAC ¶ 1).

---

[6] At this time, the Court again declines to exercise supplemental jurisdiction over Plaintiffs' state common law claims for conversion and unjust enrichment. *See Luxama*, 2012 WL 5973277, at *8 n.5. To the extent Plaintiffs are able to cure the deficiencies identified above, the Court reserves the right to revisit these claims at a later time. *See id.* Additionally, because Plaintiffs have not stated a claim under the FLSA, this Court need not reach whether Plaintiffs are entitled to an accounting or declaratory judgment under the FLSA. Finally, because this Court has found that Plaintiffs are independent contractors, the Court will not consider whether Plaintiffs have sufficiently pleaded facts to support their minimum wage claims.

As a threshold matter, Defendants argue that Plaintiffs have failed "to plead facts demonstrating any injury flowing from the purported violations of the Regulations" and therefore Plaintiffs lack Article III standing. (Defs. Br. 22). Plaintiffs do not address this issue.[7] Because this Court must assure itself that the constitutional standing requirements are met, this Court must address Article III standing at the outset.

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir.1997). The Third Circuit has explained that the Article III case or controversy test has three elements:

> (1) the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 208-09 (3d Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[I]t is proper and within the trial court's power, even on a motion to dismiss, to require [plaintiff] to go beyond . . . general allegations in the complaint and allege particularized facts supportive of its standing." *Cottrell v. Good Wheels*, No. 08-1738, 2008 WL 4792546, at *3 (D.N.J. Oct. 31, 2008) (internal quotation marks omitted) (citing *Newark Branch NAACP v. Town of Harrison*, 907 F.2d 1408, 1415 & n.10 (3d Cir. 1990)). "When a challenge to standing is made, on the basis of the pleadings, as here, the

---

[7] Plaintiffs also bear the burden of alleging facts sufficient to establish Article III standing in their complaint. *See Cottrell*, 2008 WL 4792546, at *2 ("The party invoking federal jurisdiction bears the burden of establishing standing. . . . At the pleading stage, therefore, the plaintiff must allege facts sufficient to establish his standing to invoke the court's jurisdiction.").

court must accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." *Id.* at *3.

Furthermore, the Supreme Court has noted that in class actions, "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Thus, the "Court may not defer the issue of standing to the class certification stage of this action." *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 623-24 (D.N.J. 2005) ("Demonstration of Article III standing is a threshold requirement in any action in federal court, and ordinarily a court must address the issue of Article III standing before addressing the merits of a case."), *vacated in part on other grounds by* 463 F. Supp. 2d 505, 508-09 (D.N.J. 2006).

Here, Plaintiffs failed to plead facts that demonstrate a concrete injury-in-fact that resulted from the purported violations of the Regulations. It is not enough to state that Defendants violated the Regulations. Plaintiffs must state how they sustained actual damages as a result of the alleged violations of the Regulations. Plaintiffs, instead, allege that they "experienced economic harm and irreparable injury" and "have been damaged." (Am. CAC ¶¶ 123, 149). Such averments fall short of an allegation of injury in fact.[8] The Court's dismissal is without prejudice, and Plaintiffs shall have 30 days to file an amended complaint to plead factual allegations demonstrating Article III standing.

---

[8] Because Plaintiffs have not alleged facts sufficient to establish Article III standing, this Court refrains from addressing whether Plaintiffs have pleaded a plausible claim under the Regulations. For the same reason, the Court will not consider, at this time, whether Plaintiffs' proposed class definition is defective, as Defendants suggest. (Defs. Br. 29).

## V.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Am. CAC pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.  Plaintiffs shall have 30 days to file an amended complaint to cure the deficiencies outlined in the Court's Opinion.  An accompanying Order shall follow.


*s/ Esther Salas*
**Esther Salas, U.S.D.J.**