**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VAUDRAL LUXAMA, CHANDLER LUXEUS, JAVIER R. GARCIA, FREDO BONHOMME, SANTOS MALDONADO, and CHANEL FONTIN, *each individually and as class representatives*,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>IRONBOUND EXPRESS, INC.,<br><br>        *Defendant*. | Civil Action No. 11-2224<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

The Court previously granted in part and denied in part Plaintiffs' motion for class certification. D.E. 227, 228. The Court also granted Plaintiffs leave to file an additional motion as to the relief that was denied without prejudice. D.E. 228. Currently pending before the Court is the additional motion. Plaintiffs Vaudral Luxama, Chandler Luxeus, Javier R. Garcia, Fredo Bonhomme, Santos Maldonado, and Chanel Fontin are "owner-operator" tractor-trailer drivers who lease their vehicles and driving services to Defendant Ironbound Express, Inc. ("Ironbound"). Plaintiffs allege claims for breach of contract and violations of the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1 *et seq*. Currently pending before the Court is Plaintiffs' third motion for class certification. D.E. 245. The Court reviewed the parties' submissions[1] and considered the

---

[1] Plaintiffs' brief in support of their motion is referred to as "Pl. Br." (D.E. 245); Defendant's opposition is referred to as "Def. Opp." (D.E. 271); and Plaintiffs' reply is referred to as "Pl. Reply" (D.E. 278).

motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the following reasons, Plaintiffs' motion for class certification is **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND[2]

The Court included an extensive factual background in its prior Class Certification Opinion (the "prior Opinion"), D.E. 227, which the Court incorporates by reference here.  The Court writes primarily for the parties, who are otherwise familiar with this matter.

Defendant is a company involved in intermodal freight transportation.  TAC ¶ 12. Plaintiffs are "owner-operators" who own their tractors and lease, or have leased, their tractor and driving services to Defendant.  *Id.* ¶ 6.  From at least January 20, 2003 to September 22, 2009, Defendant entered into the same standard lease agreement (the "Lease") with each Plaintiff.[3]  *See generally* D.E. 245-1, Ex. 1.  Pursuant to the Lease, Defendant agreed to compensate Plaintiffs on a "per-trip basis according to the terms of Schedule B," but a "Schedule B" was never attached to any of the Leases.  *See, e.g.*, TAC ¶ 67.  Plaintiffs allege that in lieu of the missing "Schedule B," Defendant orally promised Plaintiffs that Defendant would compensate Plaintiffs in an amount equal to seventy percent of Defendant's payment for each job, as well as for any amount Defendant collected from its customers for fuel surcharges and detention time in excess of two hours (the "Oral Agreement").  *See, e.g.*, Pl. Br. at 2.  The terms of the Lease and accompanying Oral Agreement serve as the basis for this lawsuit.

---

[2] The facts are derived from Plaintiffs' Third Amended Complaint ("TAC"), D.E. 118; Defendant's Answer ("Ans."), D.E. 120; and the exhibits attached to the parties' briefs.  D.E. 245, 271, 278.

[3] The Court cites to Luxama's March 23, 2009 Lease only, but the relevant portions of all Leases are identical.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on April 19, 2011, alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; and New Jersey's Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-4.4 *et seq.*  D.E. 1.  One hundred and eighty-eight (188) drivers opted into the case with respect to the FLSA claim.  D.E. 3-8, 17, 21-22, 26, 29, 36, 40, 42, 45, 50, 51, 53, 55-61, 76, 78.  Defendant moved to dismiss Plaintiffs' Complaint on June 30, 2011.  D.E. 19. On October 20, 2011, Plaintiffs filed their first motion for class certification on the FLSA claim. D.E. 46.   On June 28, 2012, Judge Salas granted Defendant's motion to dismiss Plaintiffs' Complaint without prejudice, finding that Plaintiffs failed to allege sufficient facts supporting the assertion that they were "employees" of Defendant, which was required for their FLSA claim. D.E. 77, 78.  That determination mooted Plaintiffs' first motion for class certification.  *Id.*

Plaintiffs filed their First Amended Complaint ("FAC") on July 30, 2012, again alleging that they were "employees" of Defendant for purposes of the FLSA, and this time adding a claim for violations of the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1 *et seq.*  D.E. 79. Defendant again moved to dismiss.  D.E. 81.  On June 27, 2013, Judge Salas dismissed Plaintiffs' FLSA claim without prejudice, finding that Plaintiffs again pled insufficient facts to demonstrate they were "employees," and dismissed without prejudice Plaintiffs' Truth-in-Leasing claims, finding that Plaintiffs had not sufficiently alleged an injury-in-fact stemming from the alleged violations of these regulations.  D.E. 97, 98.

Plaintiffs filed their Second Amended Complaint ("SAC") on July 26, 2013, alleging the same claims for relief.  D.E. 100.  Defendant again moved to dismiss based largely on the same arguments in its previous motions.  D.E. 106.  On July 30, 2014, Judge Salas heard oral argument on the motion.  D.E. 112.  The next day, the parties entered into a stipulation whereby Plaintiffs

withdrew all of their counts except two FLSA claims, a breach of contract claim, and several Truth-in-Leasing claims.  D.E. 113.  Judge Salas then dismissed Plaintiffs' FLSA claims with prejudice and Plaintiffs' breach of contract and Truth-in-Leasing claims without prejudice.  D.E. 115.

On September 24, 2014, Plaintiffs filed their Third Amended Complaint ("TAC"), alleging claims for (1) breach of contract; and (2) violations of the Truth-in-Leasing regulations, seeking declaratory and injunctive relief under 49 U.S.C. § 14704(a)(1), monetary damages under § 14704(a)(2), and attorneys' fees under § 14704(e).  D.E. 118.  On January 31, 2018, Plaintiffs and Defendant filed motions for partial summary judgment, D.E. 177, 178, which were later terminated, D.E. 196.  On the same day, Plaintiffs also filed their second motion for class certification, D.E. 179, later amending their brief in support thereof on February 14, 2018.  D.E. 182.  The Court granted Plaintiffs' second motion for class certification under Rule 23(b)(2) as to the Truth-in-Leasing claims; denied with prejudice Plaintiffs' motion under Rule 23(b)(1); and denied without prejudice Plaintiffs' motion under Rule 23(b)(3).  D.E. 227, 228.  The Court noted in its prior Opinion that the parties had not addressed the potential use of subclasses or certification of particular issues under Rule 23(c)(4).  The Court therefore provided Plaintiffs with leave to submit a motion in support thereof.

Plaintiffs in turn filed the current motion for class certification, D.E. 245.  Defendant filed opposition, D.E. 271, to which Plaintiffs replied, D.E. 278.

## III.   STANDARD OF REVIEW

Plaintiffs assert counts for violations of various Truth-in-Leasing regulations and breach of contract.  The Truth-in-Leasing counts involve alleged violations of § 376.12(d) (Count Two); § 376.12(g) (Count Three); § 376.12(h) (Count Four); § 376.12(i) (Count Five); and § 376.12(j)(3)

4

(Count Six).  TAC ¶¶ 56-99.  Plaintiffs also appear to allege violations of § 376.12(k) insofar as they claim that Defendant takes improper deductions from their escrow accounts.[4]  *Id*. ¶ 85.

### A.  Truth-in-Leasing Regulations[5]

The federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1 *et seq.*, were promulgated under the Motor Carrier Act, 49 U.S.C. § 1401 *et seq.*  Under the Act, "Congress regulates leases between independent truckers and federally regulated motor carriers."  *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016).  "Congress has tasked the Department of Transportation (DOT) with further regulating these leases" and "the DOT does so through its Federal Motor Carrier Safety Administration and its [T]ruth-in-[L]easing regulations, 49 C.F.R. [§] 376."  *Id.*  (citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 632 F.3d

---

[4] The Court notes that § 376.12(k) is not a stand-alone claim alleged in the TAC.  Rather, Plaintiffs' allegation regarding improper deductions from their escrow accounts is brought under Count Four for violation of § 376.12(h).  TAC ¶ 85.

[5] The Court notes that for Truth-in-Leasing damages claims brought under 49 U.S.C. § 14704(a)(2), the applicable statute of limitations appears to be four years (premised on the default four-year limitation provided by 28 U.S.C. § 1658(a)).  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar System, Inc*., 622 F.3d 1307, 1327 (11th Cir. 2010) ("Thus, for [49 U.S.C.] § 14704(a)(2), the default four-year statute of limitations under 28 U.S.C. § 1658(a) applies."); *Owner-Operator Indep. Drivers Ass'n, v. United Van Lines, LLC*, 556 F.3d 690, 692 (8th Cir. 2009) ("[D]amage actions under 49 U.S.C. § 14704(a)(2) are subject to the general four-year statute of limitations found in 28 U.S.C. § 1658 for civil actions arising under federal statutes."); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Mayflower Transit, LLC*, 615 F.3d 790, 792-93 (7th Cir. 2010) ("Two other courts of appeals have addressed this subject.  Both have held that § 14705(b) must be enforced as written, and that the period of limitations for suits under § 14704(a)(2) therefore is four years. We agree with those decisions."); *Elmy v. W. Express, Inc*., No. 17-1199, 2020 WL 1820100, at *8 (M.D. Tenn. Apr. 10, 2020) ("[A]ll three U.S. Circuit Courts of Appeal that have addressed the issue have held that the four-year statute of limitations pursuant to 28 U.S.C. § 1658 applies. . . . Accordingly, the Court will enforce 49 U.S.C. § 14704(a)(2) and 49 U.S.C. § 14705(c) as written and apply the default four-year statute of limitations under 28 U.S.C. § 1658(a) to Plaintiff's claims brought pursuant to 49 U.S.C. § 14704(a)(2).").  The parties, however, do not raise this issue – much less discuss related issues such as relation back under Federal Rule of Civil Procedure 15 – so the Court likewise does not reach the issue here.

1111, 1113 (9th Cir. 2011)).    The purpose of the Truth-in-Leasing regulations is to "protect

independent truckers from motor carriers' abusive leasing practices." *Id.* (citing *Owner-Operator*

*Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 636 F.3d 781, 795 (6th Cir. 2011)).    Thus, the

regulations seek

> to promote truth-in-leasing – a full disclosure between the carrier
> and the owner-operator of the elements, obligations, and benefits of
> leasing contracts signed by both parties; . . . to eliminate or reduce
> opportunities for skimming and other illegal or inequitable practices
> by motor carriers; and . . . to promote the stability and economic
> welfare of the independent trucker segment of the motor carrier
> industry.

*Id.* (citing *Comerica Bank*, 636 F.3d at 795).    The regulations achieve this goal by "requiring,

among other things, that the leases be in writing and specify their duration and the compensation

that the carrier will pay the trucker." *Id.*    The Motor Carrier Act provides a private right of action

for enforcement of the regulations, including for declaratory and injunctive relief under 49 U.S.C.

§ 14704(a)(1), monetary damages under § 14704(a)(2), and attorneys' fees under § 14704(e).

*Owner-Operator Indep. Drivers Assoc., Inc. v. C.R. England, Inc.*, 508 F. Supp. 2d 972, 983-84

(D. Utah 2007).

     Turning to the regulations themselves, § 376.12(d) requires the authorized carrier to specify

in the lease the amount it will compensate the owner, providing as follows:

> Compensation to be specified. The amount to be paid by the
> authorized carrier for equipment and driver's services shall be
> clearly stated on the face of the lease or in an addendum which is
> attached to the lease.  Such lease or addendum shall be delivered to
> the lessor prior to the commencement of any trip in the service of
> the authorized carrier. An authorized representative of the lessor
> may accept these documents. The amount to be paid may be
> expressed as a percentage of gross revenue, a flat rate per mile, a
> variable rate depending on the direction traveled or the type of
> commodity transported, or by any other method of compensation
> mutually agreed upon by the parties to the lease. The compensation
> stated on the lease or in the attached addendum may apply to

6

equipment and driver's services either separately or as a combined amount.

49 C.F.R. § 376.12(d).  Plaintiffs allege that Defendant violated § 376.12(d) because the Lease refers to a "Schedule B" as governing compensation, but Defendant did not attach a "Schedule B" to the Lease.  As such, Plaintiffs maintain that drivers' compensation is not clearly stated on the face of the Lease or in an attached addendum.  TAC ¶ 67.

Section 376.12(g) requires the authorized carrier to provide sufficient documentation to support this compensation, stating:

> Copies of freight bill or other form of freight documentation. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill.  Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees shown on the freight bill or other form of documentation.

49 C.F.R. § 376.12(g).  Plaintiffs allege that Defendant violated § 376.12(g) because Defendant either refused to allow them to examine documents setting forth rates and charges paid by Defendant's customers, or even when Defendant allowed Plaintiffs to view such documents, the rates and charges were redacted.  TAC ¶ 75.

Section 376.12(h) specifies requirements for charge-back items, stating:

> Charge-back items. The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each

7

> item is to be computed.  The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

49 C.F.R. § 376.12(h).  In a similar vein, § 376.12(j)(3) sets forth requirements regarding deductions for cargo or property damage, stating:

> The lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements. The lease shall further specify that the authorized carrier must provide the lessor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to the lessor. The written explanation and itemization must be delivered to the lessor before any deductions are made.

49 C.F.R. § 376.12(j)(3).  Plaintiffs contend that although the Lease lists a number of permissible charge-back items, the Lease fails to recite any manner in which these amounts are to be computed. TAC ¶ 82.  Plaintiffs also allege that Defendant does not provide supporting documentation or written explanation for charges it deducts from Plaintiffs' paychecks and escrow accounts for property damage.  *Id.* ¶¶ 85, 95.  It also appears that the workers' compensation paid for by Defendant and charged to Plaintiffs falls under § 376.12(h), which requires Defendant to provide Plaintiffs with the relevant documents so that Plaintiffs can confirm the validity of the charge.[6] Plaintiffs allege that Defendant does not provide the required information.  TAC ¶ 84.  Plaintiffs add that Defendant apparently overcharges them for the insurance.  *Id.*

Section 376.12(i) provides that the "lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement."  49 C.F.R. § 376.12(i).  The Lease does contain the required

---

[6] As noted in the Court's prior Opinion, § 376.12(j) also addresses insurance but does not appear to apply to workers' compensation insurance.  Instead, the provision addresses insurance coverage related to the protection of the public as to the operation of the leased equipment.  49 C.F.R. § 376.12(j).

language,[7] but Plaintiffs claim that they were nonetheless required to rent parking spaces from Defendant.  TAC ¶¶ 90, 91.

Section 376.12(k)[8] sets forth requirements regarding escrow funds, whereby if escrow funds are required under a lease, the lease shall specify, among other things: "[t]he amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party," "[t]he specific items to which the escrow fund can be applied," and "[t]hat while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund."  § 376.12(k)(1)-(3).  Section 376.12(k) also states that the authorized carrier should perform the accounting by "clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund," or "providing a separate accounting to the lessor of any transactions involving the escrow fund."  § 376.12(k)(3)(i)-(ii).  Further, the separate accounting "shall be done on a monthly basis."  § 376.12(k)(3)(ii).  Plaintiffs argue that Defendant takes deductions from their escrow accounts without any explanation or accounting.  TAC ¶ 85.

---

[7] Plaintiffs contend that this provision was not in the Lease, but the Lease clearly contains it.  *See* D.E. 245-1, Ex. 1, ¶ 15.

[8] As noted, § 376.12(k) does not appear to be a stand-alone claim alleged in the TAC.

### B. Breach of Contract[9]

Plaintiffs also assert a claim for breach of contract.  To prevail on a breach of contract claim under New Jersey law,[10] a plaintiff must demonstrate (1) the existence of a valid contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that the complaining party performed its own duties under the contract.  *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. Super. App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). Pursuant to New Jersey law, "a party must prove the existence of a contract by showing that: (1) there was a meeting of the minds; (2) there was an offer and acceptance; (3) there was consideration; and, (4) there was certainty in the terms of the agreement."  *Allen v. Bloomingdale's, Inc.*, 225 F. Supp. 3d 254, 258 (D.N.J. 2016) (internal quotations omitted).  Acceptance of a contract must be absolute and unequivocal.  *Kristensons Petroleum, Inc. v. Explorer Maritime Cruises, LLC*, No. 14-5683, 2018 WL 497070, at *6 (D.N.J. Jan 22, 2018) (citing *Cumberland Farms, Inc. v. N.J. Dept. of Envtl. Protec.*, 148 A.3d 767, 776 (N.J. Super. App. Div. 2016)).  These

---

[9] The Court notes that for breach of contract claims the applicable statute of limitations appears to be six years.  *W.H.P.M., Inc. v. Immunostics, Inc.*, No. 18-16031, 2020 WL 359146, at *3 (D.N.J. Jan. 22, 2020) ("Under New Jersey law, there is [] a four-year statute of limitations claims for breach of contracts governed by the U.C.C., but a *six-year statute of limitations for claims for breach of other contracts.*" (citing N.J. Stat. Ann. §§ 12A:2-725; 2A:14-1)) (emphasis added); *Hang Hing Loong Trading Co. Ltd. v. INCO L.L.C.*, No 15-3614, 2017 WL 4697069, at *6 (D.N.J. Oct. 18, 2017) ("Generally a breach of contract claim in New Jersey is subject to a six year statute of limitations pursuant to N.J.S.A. 2A:14-1."); *see* N.J.S.A. 2A:14-1 ("Every action at law . . . for recovery upon a contractual claim or liability, express or implied . . . shall be commenced within 6 years next after the cause of any such action shall have accrued.").  The parties, however, do not raise this issue, so the Court does not reach it here.

[10] The Lease states that "this Lease, and all of the terms and conditions contained herein, will be interpreted according to the laws of the State in which the Lease is executed."  D.E. 245-1, Ex. 1, ¶ 27.  Plaintiffs' Leases were all executed in New Jersey.  D.E. 179-5 at 9, 18, 29, 38, 48, 58.  Therefore, the Court applies New Jersey law to Plaintiff's claim for breach of contract.

required elements apply to both express and implied contracts.  *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1988).

Plaintiffs base their breach of contract claim on Defendant's alleged failures: (1) "to pay [Plaintiffs] amounts equal to seventy percent (70%) of the monies paid to Ironbound by the shipping companies," (2) "to pay Plaintiffs for detention time in excess of two hours," (3) "to pay the drivers fuel surcharges that Ironbound has collected from shipping companies which it promised to pass along to drivers," (4) to properly "set off or take[] deductions from the [Plaintiffs'] payments"; and (5) to honor the Lease's provision indicating that Plaintiffs were not required to rent parking spaces from Defendant.  TAC ¶ 54.

### C.  Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 23 governs class actions.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).  The decision to certify a class or classes is left to the discretion of the court.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009).  "The requirements set out in Rule 23 are not mere pleading rules." *Marcus*, 687 F.3d at 591 (citing *In re Hydrogen Peroxide*, 552 F.3d at 316).  "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."  *Id.* (citing *In re Hydrogen*, 552 F.3d at 307).  "A party's assurance to the court that it intends or plans to meet the requirements is insufficient."  *In re Hydrogen*, 552 F.3d at 318.

To this end, the Third Circuit has emphasized that "actual, not presumed, conformance with Rule 23 requirements is essential."  *Marcus*, 687 F.3d at 591 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (internal quotations omitted).  "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth."  *Id.* (quoting *Falcon*, 457 U.S. at 161).  This "rigorous analysis" requires

a district court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits – including disputes touching on elements of the cause of action." *Id.* Therefore, a district court "may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *In re Hydrogen*, 552 F.3d at 320.

"[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus*, 687 F.3d at 590 (citing Fed. R. Civ. P. 23(a)-(b)). A plaintiff must first demonstrate that the proposed class satisfies the four requirements of Rule 23(a):

> (1) The class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class;
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). These four prongs are often referred to as numerosity, commonality, typicality, and adequacy. *See, e.g.*, *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 165 (3d Cir. 2013). The Court previously determined that Plaintiffs satisfied Rule 23(a)'s threshold requirements of numerosity, commonality, typicality, and adequacy. D.E. 227, at 18-24. The Court further granted Plaintiffs' motion for certification under Rule 23(b)(2), and denied with prejudice Plaintiffs' motion as to Rule 23(b)(1). As such, Plaintiffs' current motion solely concerns certification under Rule 23(b)(3) and/or Rule 23(c)(4). *See* Pl. Br. at 8.

## IV.   ANALYSIS

As a threshold matter, Defendant argues that "Plaintiffs [] are seeking to relitigate this Court's judgment on Rule 23(b)(3), which is improper as the prior judgment (and the Third

Circuit's affirmance) constitutes law of the case under well-settled precedent." Def. Opp. at 3. In sum, Defendant argues that Plaintiffs are merely relitigating the Court's previous decision to deny class certification under Rule 23(b)(3), interlocutory review of which was denied by the Third Circuit under Rule 23(f). Defendant asserts that the Court denied certification under Rule 23(b)(3) without prejudice "in the context of its discussion of Rule 23(c)(4), *not* within its Rule 23(b)(3) discussion." *Id*. at 3 n.1. Therefore, according to Defendant, "the Court's directive was that Rule 23(b)(3) certification was dismissed only without prejudice as to presenting a (c)(4) sub-class." *Id*.

The Court finds Defendant's argument unpersuasive. The Court previously (1) granted Plaintiffs' motion for class certification under Rule 23(b)(2); (2) denied with prejudice Plaintiffs' motion under Rule 23(b)(1); (3) and denied *without prejudice* Plaintiffs' motion under Rule 23(b)(3). D.E. 227, 228. The Court's prior Order stated as follows:

> As set forth in the accompanying Opinion, if Plaintiffs believe that a Rule 23(b)(3) class as to a certain issue or issues is appropriate, they are to submit their motion in support thereof within forty-five (45) days.

D.E. 228. In sum, the Court denied Plaintiffs' motion for class certification under Rule 23(b)(3) *without prejudice* and expressly permitted Plaintiffs to submit further briefing on their position. Specifically, in its prior Opinion, the Court observed that the voluminous individualized damage calculations could defeat the predominance requirement of Rule 23(b)(3). D.E. 227 at 31-33. However, the Court dismissed Plaintiffs' motion for certification under Rule 23(b)(3) without prejudice. Thus, to the extent Plaintiffs now raise issues that were not previously considered and decided by the Court, the Court addresses them herein.

**A.  Class Certification under Rule 23(b)(3)**

Plaintiffs argue that the Court should certify this matter pursuant to Rule 23(b)(3), indicating that damages can be shown on an aggregate basis.  Pl. Br. at 6.  Plaintiffs also assert that individualized damages issues cannot defeat predominance under Rule 23(b)(3).  *Id.*  Plaintiffs request the following relief:  (1) certification under Rule 23(b)(3) as to both liability and damages, (2) alternately, certification under Rule 23(b)(3) as to liability and a deferral on the issue of damages, or (3) alternately, certification of particular issues under Rule 23(c)(4).[11]  *Id.* at 8.

Rule 23(b)(3) provides as follows:

> (b) Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

As for certification under Rule 23(b)(3), "[t]he party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."  *Marcus*, 687 F.3d at 591 (citing *In re Hydrogen*, 552 F.3d at 307).  In determining whether the requirements of Rule 23 are met, the Court "must conduct a 'rigorous analysis' of the evidence and arguments put forth."  *Id.* (quoting *Falcon*, 457 U.S. at 161).  To this end, and as noted, the Court must "resolve all factual

---

[11] In light of the Court's rulings herein, the Court does not reach the Rule 23(c)(4) analysis.

or legal disputes relevant to class certification, even if they overlap with the merits – including disputes touching on elements of the cause of action." *Id.*

Rule 23(b)(3) class certification requires that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (emphases added) (citing Fed. R. Civ. P. 23(b)(3)). These are commonly referred to as the "predominance" and "superiority" requirements. *Id.*

As to the "predominance" requirement, the inquiry "focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 164 (3d Cir. 2015), *as amended* (Apr. 28, 2015). In other words, "the predominance requirement is met only if the district court is convinced that the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (internal quotations omitted). "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member[.]" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 260 (3d Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)), *as amended* (Sept. 29, 2016). In comparison, "a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* The Third Circuit has described a district judge's task as follows:

> In practice, this means that a district court must look first to the elements of the plaintiffs' underlying claims and then, "through the prism" of Rule 23, undertake a "rigorous assessment of the available

> evidence and the method or methods by which [the] plaintiffs propose to use the evidence to prove" those elements.

*Reinig*, 912 F.3d at 128 (quoting *Marcus*, 687 F.3d at 600). If, after doing so, a district court

determines that "proof of the essential elements of the [claim] requires individual treatment, then

class certification is unsuitable." *Id*. (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith*

*Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).

With respect to the "superiority" requirement, a district court must "balance, in terms of

fairness and efficiency, the merits of a class action against those of alternative available methods

of adjudication." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

This balancing requires a court to consider the following, non-exclusive factors:

> (1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action.

*Id.* Lastly, the Third Circuit has also recognized that "[a] plaintiff seeking certification of a Rule

23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable."[12]

*Byrd*, 784 F.3d at 163. "The ascertainability inquiry is two-fold, requiring a plaintiff to show that

(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and

administratively feasible mechanism for determining whether putative class members fall within

the class definition.'" *Id.* (quoting *Marcus*, 687 F.3d at 593-94).

---

[12] The Court notes that, unlike a Rule 23(b)(3) class, "ascertainability is not a requisite of a Rule 23(b)(2) class" under Third Circuit law. *Byrd*, 784 F.3d at 163 n.7 (citing *Shelton v. Bledsoe*, 775 F.3d 554, 559-63 (3d Cir. 2015)); *see Shelton*, 775 F.3d at 563 ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief.").

**B.  Predominance Analysis**

As noted, Plaintiffs claim that their breach of contract claim is based on the following: breach of an Oral Agreement which promised Plaintiffs a 70/30 split on the fee paid by Defendant's customers, payments for detention time over two hours, and reimbursements for fuel surcharges that Defendant collected.  Plaintiffs add that Defendant breached the Lease when it required certain drivers to rent parking spaces.  In addition, Plaintiffs assert that numerous provisions of the Lease violate the Truth-in-Leasing regulations.

Defendant acknowledges that the Lease "unambiguously controls the entire independent contractor relationship between Plaintiffs and Ironbound."  Def. Opp. at 11.  Defendant claims that Schedule B of the Lease was actually the trip sheet that drivers would receive on each individual haul.  *Id.* at 12.  Defendant denies that there was an Oral Agreement for a 70/30 split and adds that, in any case, the Oral Agreement would not be enforceable because the Lease makes clear that it can only be modified in a writing signed by the parties.  *Id.*

As to the trip sheets, Defendant explains that each sheet provided an "initial offer" which each driver could accept, decline, or negotiate.  *Id.*  Defendant continues that the amount offered was based on a variety of factors considered by Defendant's dispatchers, including travel distance, amount of work, deadlines, pick-up and drop-off locations, the type of load and how it was to be transported, fuel surcharges, and several other factors.  *Id.* at 13-14.  Defendant notes that when it cannot find a driver in a timely manner, it may increase its pay rates.  *Id.* at 14.  Defendant asserts that due to the individual nature of the negotiations, class treatment is not appropriate.  *Id.* at 15-23.

Turning to detention time, Defendant does not deny that detention time was paid but indicates that such payments depended "on circumstances unique to each trip."  *Id.* at 13.  As to

17

fuel surcharges, Defendant also acknowledges that it reimbursed such charges but that such reimbursement varied among the drivers.  *Id.* at 20.

In short, Defendant appears to take the bold position that because it violated the Truth-in-Leasing regulations, Plaintiffs should be precluded from bringing a class action.  As noted, the purpose of the regulations is to "protect independent truckers from motor carriers' abusive leasing practices[,]" which is achieved by "requiring, among other things, that the leases be in writing and specify their duration and the compensation that the carrier will pay the trucker."  *Fox*, 839 F.3d at 1211 (citation omitted).  Yet, Defendants freely concede that there was no Schedule B to the Lease.  Defendant's failure to clearly set forth the specific compensation (as either a percentage of gross revenue, a flat rate, or a variable rate) that Plaintiffs were to receive per trip flies directly in the face of 49 C.F.R. § 376.12(d).  Defendant's ad hoc determination as to what it would offer drivers per trip (or for detention time or for fuel surcharge reimbursement), based on a variety of factors that *Defendant* considered but which were not specified in writing, is precisely what the Truth-in-Leasing regulations were designed to avoid.  It is also not lost on the Court that Defendant's argue that the Oral Agreement is unenforceable because it is not in writing and signed by the parties while at the same time assert that the trip tickets are enforceable – even though the tickets are not mentioned in the Lease and are not signed by both parties.  If accepted, Defendant's position would result in perverse incentives for carriers to flagrantly flout the regulations.  The Court rejects this argument.

Before turning to the remainder of the analysis, the Court reviews three cases cited by the parties:  *Neale v. Volvo Cars of North Am., LLC*, 794 F.3d 353 (3d Cir. 2015), *Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3d Cir 2015), and *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 358 (3d Cir. 2016).  *Neale* analyzed the scope of the Supreme Court's decision in *Comcast v. Behrend*, 569

U.S. 27 (2013).  *Comcast* was an antitrust class action in which the plaintiffs submitted four theories of antitrust impact.  *Id.* at 31.  The district judge accepted one theory but rejected the rest. *Id.*  The district judge then certified the class although the plaintiffs' expert's damages model did not isolate the sole theory that the court found viable.  *Id.*  The model instead assumed the viability of all four theories.  *Id.*  The *Comcast* Court found that the class certification was improper because the damages model, based on all four theories, did not reflect the particular antitrust injury, based on the one theory.  *Id.* at 34-38.

In *Neale*, a class action concerning defective sunroofs in motor vehicles, the defendants argued that *Comcast* required that damages be capable of measurement across the entire class under Rule 23(b)(3).  *Neale*, 794 F.3d at 374.  The Third Circuit began by reviewing *Comcast*'s ruling: "*Comcast* held that an antitrust litigation class could not be certified because the plaintiffs' damages model did not demonstrate the theory of antitrust impact that the district court accepted for class-action treatment."  *Id.* (citing *Comcast*, 569 U.S.  at 34-35).  The *Neale* court noted that its reading of *Comcast* was consistent with the decision of several other Courts of Appeal.  *Id.* at 374 & n.10 (collecting cases that indicate, among other things, that *Comcast* requires a damages calculation to reflect the theory of liability - not that damages be measurable on a class-wide basis). In further support, the court in *Neale* cited to the dissent in *Comcast* for the proposition that it is nearly universally accepted that individual damages calculations do not preclude certification under Rule 23(b)(3).  *Id.* at 374-75 (citing *Comcast*, 569 U.S. at 41 (Ginsburg, J. & Breyer, J., dissenting)).

Shortly after *Neale* was decided, the Third Circuit issued *Reyes.  Reyes* concerned a class action against a bank and its subsidiary, alleging violations of the Racketeer Influenced and Corrupt Organizations Act.  802 F.3d at 474.  Relying on *Neale,* the court in *Reyes* stated that the

inability to calculate damages on a class-wide basis does not preclude certification under Rule 23(b)(3). *Id.* at 485, 489 (citing *Neale*, 794 F.3d at 374-75 n.10).

Yet, the following year in *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 358 (3d Cir. 2016), the Third Circuit ruled that "[t]he predominance requirement applies to damages as well, because the efficiencies of the class action mechanism would be negated if '[q]uestions of individual damage calculations . . . overwhelm questions common to the class.'" (quoting *Comcast*, 569 U.S. at 34). At the same time, the *Modafinil* court acknowledged *Neale* for the proposition that damages need not be "'susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" *Id.* at 358 (quoting *Neale*, 794 F.3d at 374).

*Neale*, *Reyes*, and *Modafinil* are all binding precedent that this Court must follow. As a result, the Court determines, as per *Neale* and *Reyes*, that the fact that damages are not measurable across an entire class does not defeat predominance. However, as per *Modafinil*, individual damages issues are subject to a predominance analysis and individual damages issues that overwhelm common issues will defeat predominance.[13]

### 1. Oral Agreement - Liability

In analyzing predominance, a court must first start with the elements of the underlying cause of action. *Neale*, 794 F.3d at 370 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). A court, however, must consider those elements in light of the relevant evidence. *Id.* at 372. A court must also envision how a trial on the claim will play out, evaluating

---

[13] There is another interpretation of *Neale* which is reasonable. That is, *Neale* stands for the proposition that the inability to aggregate damages across the entire class does not *automatically* defeat predominance. Instead, the issue would need to addressed on a case-by-case basis. This alternative approach arguably finds some support in *Neale* because *Neale* was ruling on the scope of *Comcast* (*i.e.*, that a damages model must match the theory of liability) rather than the scope of proving damages in the aggregate in a class action. However, because *Reyes* did not expressly adopt this approach, the Court believes that it is without authority to do so.

the available evidence and the method by which the plaintiffs intend to prove the disputed element at trial. *Id.* If a court is reviewing a proposed settlement class, however, then the court does not have to consider how the evidence will be presented at trial. *Id.* at 372.

As to the Oral Agreement, the Court begins with the following observation by the Third Circuit in *Reyes*:

> The District Court relied on *Johnston v. HBO Film Management, Incorporated,* 265 F.3d 178, 190 (3d Cir.2001), and *In re LifeUSA Holding, Incorporated,* 242 F.3d 136, 146 (3d Cir.2001), . . .
>
> In *In re LifeUSA Holding, Incorporated,* the fraud involved a product that "was not sold according to standard, uniform, scripted sales presentations." 242 F.3d at 146. We concluded that simply focusing on whether all potential class members were misled by the same product was inappropriate. *Id. We also stated that when "the record is uncompromising in revealing non-standardized and individualized sales 'pitches' presented by independent and different sales agents, all subject to varying defenses and differing state laws,* . . . *certification of individualized issues [is] inappropriate." Id.* at 147; *cf. Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1255 (2d Cir.2002) ("[M]aterial uniformity in the misrepresentations may be established without the use of a standardized sales script[, for example.]").
>
> In *Johnston, we again held that oral misrepresentation must be uniform in order to establish predominance under Rule 23(b)(3). See* 265 F.3d at 190. Thus, "it has become well-settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action." *Id.* (internal citations omitted).

*Reyes*, 802 F.3d at 489-90 (emphasis added). The issue here is not oral misrepresentations but oral agreements. Nevertheless, the reasoning espoused in *Reyes* hold true – the oral agreements must be uniform (or at least not materially different) to qualify for class treatment.

Turning first to the oral agreement to pay drivers the 70/30 split, Plaintiffs repeatedly allege that "all" Plaintiffs were promised 70% of the fee that Defendant collected on each trip. *See, e.g.*, Pl. Br. at 2, 23. Defendant, however, paints a different picture with citations to each named

Plaintiff's deposition testimony.  Def. Opp. at 21-23.[14]  Plaintiff Garcia believed that the Lease

contained the 70% amount, but the Lease clearly did not.  Plaintiffs Luxama and Luxeus indicated

that the 70% was based on industry standard.  Plaintiff Maldonado testified that he was told that

he would, in fact, receive 70% "of the move."  Plaintiff Fontin stated he was promised 70% and

noted that was what the law required and what he had been previously paid.  Plaintiff Bonhomme

indicated that a person named "Chris," who worked for Defendant said that Bonhomme would

receive 70% of the gross amount received by Defendant.  In reply, Plaintiffs only address Fontin,

asserting that he was informed on three different occasions that he would receive 70%.  Pl. Reply

at 22 n.12.

In light of the named Plaintiffs' varying testimony as to the basis of the 70/30 split, the

Court finds that Plaintiffs have not shown by a preponderance of the evidence that they can prove

the existence of an oral agreement on this issue through common evidence.  At a minimum, there

appear to be – among named Plaintiffs – three significant variations as the 70% agreement.  As

noted, an element of a breach of contract claim is establishing a valid contract.  *Pollack*, 172 A.3d

at 576.  Here, *some* of the named Plaintiffs assert in some form that they were promised 70% of

Defendant's revenue per trip.  But another named Plaintiff claims that the amount was stated in

the Lease – in direct contradiction of one of Plaintiffs' primary arguments.  And two others state

that they thought they were due the amount based on "industry standard."  A trial on this critical

issue – the existence of an agreement to pay 70% – would be inappropriate at the class level given

the different accounts of the named Plaintiffs.  Plaintiffs have not shown that the oral agreements

---

[14] Defendant also argued in opposition to the last certification motion that Plaintiffs could not, through common evidence, establish the 70/30 split through common evidence.  While acknowledging Defendant's position, the Court did not rule on it at that time.  Prior Opinion at 31.

as to the 70% payment were uniform.  *See Reyes*, 802 F.3d at 489-90  These individual issues on establishing the existence of a valid agreement predominate over common issues.[15]

A breach of contract based on reimbursement for fuel surcharges suffers the same fate. Defendant does not contest that it did pay such reimbursement (at least on occasion), but it disputes that it agreed always to pay the full reimbursement amount.  Again, Defendant point to Plaintiffs' own deposition testimony to show that Plaintiffs are inconsistent as to Defendant's promise or agreement to pay such reimbursement.  Def. Opp. at 20.  Plaintiff Fontin testified that the reimbursement was promised in Schedule B to the Lease.  Plaintiff Luxama asserted that he was owed reimbursement pursuant to industry standard.   Plaintiff Bonhomme did not expect reimbursement when he first started with Defendant but later believed that he was entitled to reimbursement.  In other words, the named Plaintiffs' testimony indicates that there was not a uniform agreement as to reimbursement for fuel surcharges.   These individual issues on establishing the existence of a valid agreement as to the fuel surcharge also predominate over common issues.   Plaintiffs point to critical testimony by Defendant's Vice President and General Manager, Daniel Lastra.  Pl. Br. at 2 n. 4.  Defendant maintains that Lastra indicated that drivers were entitled to reimbursement for fuel surcharges.  However, a review of Lastra's deposition testimony reveals that Lastra did not testify that all drivers were entitled to full reimbursement of fuel surcharges.

But Plaintiffs' breach of contract claim based on detention time can be proven by common evidence, and predominance favors Plaintiffs.  As noted, Plaintiffs submit that Defendant promised to pay drivers for detention time exceeding two hours.  Defendant does not contest that it paid

---

[15] In their reply brief, Plaintiffs also contend that they can recover based on theory of quantum meruit, Pl. Reply at 11, but this theory was never asserted in the Third Amended Complaint.

detention time, but instead asserts (with deposition cites) that named Plaintiffs testified inconsistently as to the amount of detention time that they were actually paid.  Def. Opp. 20-21.  The portions of the record that Defendant relies on, however, do not refute Plaintiffs' statements that drivers were promised payment when detention time exceeded two hours.   Instead, Defendant's information pertains to what Plaintiffs were actually paid.  Defendant's assertion addresses damages rather than liability.  Thus, Plaintiffs have sustained their burden of proof on this issue.

Finally, Plaintiffs have also sustained their burden on the remaining breach of contract issue – Defendant's requirement that certain drivers rent parking spaces from Defendant.  On this issue, the Lease is consistent with the regulations.  Section 376.12(i) provides that the "lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement."  49 C.F.R. § 376.12(i).  The Lease does contain the required language, but Plaintiffs claim that they were nonetheless required to rent parking spaces from Defendant.  Plaintiffs' evidence on this point is unrefuted, and Plaintiffs have sustained their burden.

### 2.  Truth-in-Leasing Regulations – Liability

Plaintiffs raise numerous points as to the Lease vis-à-vis the Truth-in-Leasing regulations.  Section 376.12(d) requires the authorized carrier to specify in the lease the amount it will compensate the owner and the manner in which the compensation will be calculated.  49 C.F.R. § 376.12(d).  Plaintiffs state that Defendant violated the section because the Lease refers to a "Schedule B" as governing compensation but "Schedule B" was not attached.  Section 376.12(g) requires the carrier to provide sufficient documentation as to the compensation.  49 C.F.R. § 376.12(g).  Plaintiffs indicate that Defendant violated this section because Defendant either refused

to allow them to examine documents setting forth rates and charges paid by Defendant's customers or, when Defendant allowed Plaintiffs to view such documents, the rates and charges were redacted.

Section 376.12(h) specifies requirements for charge-back items, indicating that all items must be specified in a lease and that the driver must be given copies of documents "necessary to determine the validity of the charge." 49 C.F.R. § 376.12(h). Similarly, Section 376.12(j)(3) sets forth requirements regarding deductions for cargo or property damage, including that a lease must specify the conditions for such deductions and that the carrier must provide a written explanation or itemization to the driver before taking the deductions. 49 C.F.R. § 376.12(j)(3). Plaintiffs contend that although the Lease lists a number of permissible charge-back items, Defendant did not provide the supporting documentation for charge-back items or damage deductions. It also appears that the workers' compensation paid for by Defendant and charged to Plaintiffs falls under Section 376.12(h), which requires Defendant to provide Plaintiffs with the relevant documents so that Plaintiffs can confirm the validity of the charge.[16] Plaintiffs allege that Defendant did not provide the required information and apparently overcharged for the insurance. Section 376.12(k)[17] sets forth requirements regarding escrow funds, including that a lease specify the items to which the fund can be applied, that the carrier provide a driver with an accounting of any transactions involving the fund, and that the accounting occur on a monthly basis. 49 C.F.R. §

---

[16] As noted in the Court's prior Opinion, § 376.12(j) also addresses insurance but does not appear to apply to workers' compensation insurance. Instead, the provision addresses insurance coverage related to the protection of the public as to the operation of the leased equipment. 49 C.F.R. § 376.12(j). Despite this prior ruling, Plaintiffs continue to press the Section 376.12(j) argument, *see, e.g.*, Pl. Br. at 14, 16, but fail to provide any legal authority in support of their argument. Again, the Court rejects this argument.

[17] As noted, § 376.12(k) does not appear to be a stand-alone claim alleged in the TAC.

376.12(k)(1)-(3).  Plaintiffs assert that Defendant took deductions from their escrow accounts without any explanation or accounting.

As to liability under the Truth-in-Leasing regulations, Plaintiffs sustain their burden of demonstrating predominance.  In fact, Defendant does little, if anything, by way of addressing individual issues as to liability for violating the regulations.  For example, Defendant argues that its "charges for damage to equipment also reflect variations among drivers.  Drivers with greater skill at inspecting chassis before use would likely never pay for chassis repairs."  Def. Opp. at 19. Putting aside issues with requiring drivers to prove that they did not damage a vehicle, Defendant's argument does not speak to the critical issue – providing drivers with required documentation to support property damage deductions.  To the extent that the Lease allegedly does not contain information required by the regulations, a jury will be able examine the lease and determine whether it complies with the regulations.  To the extent that Defendant failed to provide Plaintiffs with required documentation to support charge-backs, damage deductions, escrow deductions, or workers compensation insurance, the named Plaintiffs' testimony as to their same or substantially similar experiences is sufficient to satisfy the predominance requirement.

### 3.   Oral Agreement and Truth-in-Leasing Regulations – Damages

In its prior Opinion, the Court determined that Plaintiffs failed to show predominance concerning damages and the 70/30 split.  Prior Opinion at 31-32.  However, in light of the Court's ruling as to liability and the 70/30 split, the damages issue is now moot.  The Court is not certifying a class based on the alleged 70/30 split.

Plaintiffs generally assert that "damages will, in the first instance, be established class-wide in the aggregate, based on common proofs by reference to Ironbound's own books and records and simple mathematical formula."  Pl. Br. at 24; *see also id.* at 6.  However, at the same

time, Plaintiffs assert that pursuant to the current scheduling order, they have not yet engaged in class-wide discovery as to damages. *Id.* at 6 n.6.[18]  The Court does not necessarily agree that "simple math," *id.* at 6, will be sufficient to establish class-wide damages.  However, given that Plaintiff has not taken complete discovery on this issue, the Court will reserve on whether to certify the class as to damages.  After Plaintiffs have taken discovery, they may reassert their position.  And Defendant will be given ample opportunity to respond.  At that point, the Court will evaluate the evidence and determine whether some or all of the claimed damages are appropriate for class treatment.

### C.  Superiority Analysis

To assess superiority, courts consider (1) class members' interests in individually controlling separate actions; (2) the extent and nature of litigation of any related litigation that is already underway; (3) the desirability of concentrating litigation of the claims in the particular forum; and (4) the manageability of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).  In considering these factors, Plaintiffs argue that class actions are a superior method to adjudicate Defendant's violations of the Truth-in-Leasing regulations and the breach of contract claims because Plaintiffs' claims are identical to all class members.  Further, because the potential damages to be recovered are not substantial "independent efforts to vindicate their rights in stand-alone suits is unlikely."  Pf. Br. at 37.  Plaintiffs further explain that they are unaware of any other pending litigation based on Defendant's violation of the regulations.  *Id.*  Finally, Plaintiffs contend that it is logical to concentrate claims in New Jersey because Defendant is located in New Jersey and all drivers are dispatched from New Jersey.  *Id.*

---

[18] Plaintiffs acknowledge that they have received "limited financial records" from Defendant.  *Id.* at 6.

The Court generally agrees with Plaintiffs' arguments, and finds that Plaintiffs satisfy the superiority requirement.  The Court does not fully agree with Plaintiffs' assertions as to damages. As discussed, the Court is reserving on class treatment for damages.  However, the Court does agree that as to the issues certified for class treatment, establishing liability through a class action outweighs class members' interests in individually controlling separate actions.

Defendant's primary argument as to superiority is the requirement is not met because "the Court will be forced to conduct dozens of mini-trials on both damages and liability to properly resolve this case[.]"  The Court does not share the same concern in light of its rulings on liability and its reservation on damages.

## D. Ascertainability

"The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"  *Byrd*, 784 F.3d at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).  "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."  *Marcus*, 687 F.3d at 593. "However, a plaintiff need not 'be able to identify all class members at class certification – instead, a plaintiff need only show that class members can be identified.'"  *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020) (quoting *Byrd*, 784 F.3d at 163 (internal quotation omitted)).  The class here consists of all drivers that entered into the Lease as of April 20, 2007.  Thus, Plaintiffs contend that the mechanism for identifying class members consists only an examination of Defendant's business records during the class period.  Pl. Br. at 38.  The Court agrees; the proposed class is ascertainable.

### E.  Class Definition

Rule 23(c)(1)(B) requires that the class-certification order or incorporated opinion indicate "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis."  *Byrd*, 784 F.3d at 163 (citing *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187-88 (3d Cir. 2006)).  Therefore, the Court certifies the following:

> a Rule 23(b)(3) liability class as to Plaintiffs' breach of contract claims regarding detention time and parking space rental, and as to Defendant's alleged violations of the Truth-In-Leasing regulations consisting of all independent owner-operators who entered into a regulated lease with Defendant, directly or indirectly through Defendant's agents, and whose regulated lease was in effect at any time between April 20, 2007 through the pendency of this action.

> Excluded from this class are Plaintiffs' counsel, officers and directors of Defendant, judicial officers assigned to this case, and staff and immediate relatives of judicial officers assigned to this case.

In addition, the Court has already certified the following class:

> a Rule 23(b)(2) class for declaratory and injunctive relief regarding Plaintiffs' alleged Truth-in-Leasing violations:

> All independent owner-operators who entered into a regulated lease with Defendant, directly or indirectly through Defendant's agents, and whose regulated lease was in effect at any time between April 20, 2007 through the pendency of this action.

> Excluded from this class are Plaintiffs' counsel, officers and directors of Defendant, judicial officers assigned to this case, and staff and immediate relatives of judicial officers assigned to this case.

**V.      CONLUSION**

For the reasons stated above, and for good cause shown, Plaintiffs' motion for class certification (D.E. 245) is **GRANTED in part** and **DENIED in part**.   The Court certifies the above-described Rule 23(b)(3) liability class.   Plaintiffs' motion for class certification is otherwise denied.   However, after Plaintiffs have taken discovery as to damages, they may reassert their position that some or all of the claimed damages are appropriate for class treatment.   An appropriate Order accompanies this Opinion.

Dated: January 27, 2021

_____
John Michael Vazquez, U.S.D.J.